The District Court erred by failing to apply the correct test to determine whether Mr. Berryhill was more than a courier because his conduct here was more than a one-time event, and this was obvious error. Well, can I probe you about that? Isn't the judge's real obligation under 3E1.1 to address the argument that you had put forward for mitigating rule adjustment? And so I assume that the judge was called upon only to discuss the relative culpability in connection with your objection number one of the pre-sentence report. Is that true? Well, I think under Delgado-Lopez, if we only make limited factual assertions and the court rejects them, then yes. Well, in other words, if in objection number one of the pre-sentence report you didn't discuss any other participants in the conspiracy, you didn't discuss the defendant's, Mr. Berryhill's, relative culpability with regard to any other particular individual or any other particular role, how was the judge supposed to sui sponte address the relative culpability if he doesn't have the benefit of your argument? Well, Your Honor, I think this would go to harm, but I'm happy to discuss this. In the objection, it was more than Mr. Berryhill as a mere courier. What counsel said in the objection was that Mr. Berryhill had no proprietary interest in the sale of the drugs. He also was instructed where to go to pick them up and where to drop them off. And all that's in objection number one? It's in his PSR objection. Yeah. I guess I'm not seeing that, but go ahead. So in his PSR objection, he also asserts it's in sort of the concluding area of the PSR objection that he did not procure the drugs himself. I don't think that that response really, at least as I understand, Judge Backright, goes to the point, which is really was there an identification of other participants that would have led the court to believe that it needed to engage in a comparative analysis that the guidelines would otherwise contemplate? I mean, if the objection didn't just describe his role but did not describe the role relative to others, then why would the court think there was any need to engage in a comparative process relative to others? In fact, I think the guidelines, I won't take the time to fish it out, but in the commentary, it has a section that specifically says if there are no other participants, you don't have to do that. So help me. Why not? Well, so to start, Your Honors, there were other participants. That was undisputed. But importantly, that's why we have the five-factor test, and it doesn't actually require you to identify a specific other participant's role. And the reason for that is this. In cases like this where we have a minimal or a minor participant, it is very much unsurprising that the defendant will be unable to identify others' roles specifically. Counsel, what about all the phone calls that he made to people, including people in Mexico, about getting the drugs and moving the drugs? I'm sorry, Your Honor, I'm having a hard time hearing. What about his phone calls, the evidence from his phone calls about discussing, this goes to whether he was more than a mule, discussing getting drugs from Mexico and transporting them all over the place? Yeah, so the court made a finding about the phone calls, and the court's inference from those phone calls was simply that he's been doing this more than one time. This has been going on for some period of time, and that's not inconsistent with what he argued, that he's in the transportation role only. Certainly, that he's communicating with people he's dropping off drugs with doesn't contradict or foreclose his argument that he's really only limited to transportation, that he receives no proprietary benefits from the sale of the drugs, and that he's being told where to go. What I'm struggling with is this. The guidelines make it fairly clear in the commentary that the fact that you are just a mule does not entitle you to the adjustment. You agree with that, right? I do agree. Okay, well, if the defendant describes his role as a mere courier, but then does not provide the basis for judging mere courier against others so that the court has some ability to engage in a comparative process, I'm a mere courier, well, the guidelines say that doesn't do enough to get you the adjustment. Well, he's got to do something more than that, right? I mean, the guidelines specifically say you have to do more than that. So I have two responses, Your Honor. First of all, the guidelines also specifically say that we don't have a proprietary interest in the criminal activity that the adjustment could apply and the court has to apply the five factors. Do you disagree that there needs to be a comparative analysis of my role vis-a-vis other participants in the activity? I don't disagree with that. That's the five-factor test. Well, how do you engage in the five-factor test if there is not any sort of even rough delineation of who else I should be comparing my role as defendant to? Well, you can perform the five-factor test in this case where the district court could, excuse me. We obviously wouldn't perform that test. Well, in the first instance, why wouldn't you? You would delineate it the way – consistent with what Judge Bacharach said. If you're going to do an objection and you're going to tell the court what you want it to do, in the first instance, why don't you tell the court what it should look like? Don't you agree that's part of the role of counsel? Yes, Your Honor, and in the objection, the defense counsel did lay out the five factors and argue under each of those. And it's important to note that we don't have a specific identification of another person's role. But what we do know, at least if the court were to have believed my client's claims of being told where to go and not procuring drugs, is that we know somebody else is profiting from this scheme. It's not my client. We know somebody else is procuring the drugs, not my client. We know somebody else is telling him where to pick up and drop off the drugs, not my client. And under the five factors, I think that these facts are at least enough for the court to assess whether my client is entitled to the adjustment. I'm certainly not telling this court that the district court would have been compelled to grant the adjustment under these facts, but it certainly was not foreclosed either under these facts. Can I ask you, with regard to prong two of plain error, the obviousness of the error, and to follow up with the Chief's question, in your objection to number one, the pre-sentence report, you say counsel contends that the defendant was transporting drugs. Therefore, he is substantially less culpable than the average participant. And then you go on to make the argument or to say, I think, what the factual basis is for the argument that you just elucidated in your response. Why isn't it at least reasonable for the district judge to interpret all of the indicia of what Mr. Berryhill did not do in connection with the topic sentence, that he is contending that he was just transporting drugs, and therefore, he is relatively less culpable than the average participant? It seems to be that the judge was simply addressing your overarching argument that he was simply transporting the drugs, and therefore, he is relatively less culpable. Why isn't that at least a reasonable interpretation of your argument in your objection? Well, okay, so the district court's reasoning is simply that my client isn't a transporter of drugs because he's doing it more than one time. And the district court is comparing that to what it thinks is the average courier, which it cannot do under the guidelines. That's clearly wrong. And so if you read the district court's order, with respect to the phone calls and everything else, it keeps referring to the number of times this is happening, how long this is going on. And my client never claimed that he was a one-time drug curer. He did claim that he was transporting drugs. I'm not disputing that. But there's nothing in the district court's order that contradicts what he's actually saying, which is that, yeah, I might be going more than once, but I'm certainly not collecting the profits. I'm not being told where to go and what to do. Well, you do say that he did not participate in the planning of the criminal activity, and there was evidence that the judge relied on to say that he actually did negotiate the $25,000 charge for at least one delivery. Well, I don't agree that even the PSR says that he negotiated anything. The PSR simply refers to many phone calls where they're discussing drug trafficking, and then the probation sort of hedges, saying discussing prices presumably for the distribution of methamphetamine up to $25,500. But there's nothing in there that says he's actually negotiating anything. For all we know, based on the PSR, he's simply being told by whoever it is giving him the drugs to transport that this is what you need to collect in return to us. Was the judge obviously incorrect in interpreting the PSR to suggest that he did negotiate the $25,000 charge for that one delivery? Your Honor, I don't read the court as actually even saying that my client negotiated anything at all. The order simply says that it contained multiple conversations, defendants speaking about drug transactions, certainly transacting drugs, just a swap, but nothing about negotiation, talking to different people, numbers of conversations, and it indicates to me that he's a lot more than a mule. In the very next sentence, it was not a one-time event. So clearly, I think the judge is saying you've done this more than once, that's more than a one-time mule, because a one-time mule just simply goes to Chicago, does one load, gets $1,000, that's it. And so that's the district court's order. Let me understand one thing. It seemed to me that the essence of your argument is really not sort of a particularized analysis of the court's – well, a particularized view of the court's analysis as much as a claim of legal error, like sort of a top-line claim of legal error because the court engaged in this hypothetical comparison of your client to this person who moves drugs to Chicago or something. I mean, in other words, it seemed to me that you're not at this point engaging with the merits of whether the court had enough, as a matter of fact, to make a determination or not, but rather a legal claim of error related to the things the court did. In other words, it's a hypothetical comparison of your client to someone else. Yes, if I understand Your Honor's question, I agree with you. This is a legal error claim where I'm arguing sort of two-fold legal error. One, the court didn't apply the correct test. And two, that it applied the test that the guidelines clearly prohibit, which is the hypothetical or average defendant. I'm certainly not quibbling with the court's findings, but I am saying for purposes of harm that there would have been enough for the court to at least perform the analysis. If I may reserve the balance of my time, Your Honor. May it please the court, my name is Linda Epperle. I represent the United States of America in this appeal. The standard of review, Your Honors, here is plain error. The issue is whether or not the court applied a wrong test, and that is a legal issue. The questions posed by the court to my opposing counsel highlight the fact that the burden of proof here was on the defendant. The argument here, he did not object, Judge Bachrach, as you noted. In that objection, he did not state, these are the relative participants you can compare me to. This is the source, this is the person who assists in the transportation, none of that. There was not an objection, a factual objection, to paragraph 18 of the PSR, which is where all of the conversations with people in Mexico is discussed, where he talked about transporting and trafficking methamphetamine through Texas and New Mexico and Phoenix and Tulsa, and communicated regarding obtaining meth and regarding pricing for meth up to $25,000. Well, Ms. Epperle, even if the denial of the mitigating rule adjustment would otherwise be appropriate, it seems to me that the argument that is being made here is that the court engaged in an improper legal analysis. In other words, beyond the question of whether this otherwise would have been the right result, the question is the court applied the wrong legal lens, and specifically I think part of the focus here is on this comparative analysis to the hypothetical mule. And so would you please address what your response is to that, and more specifically, at least it's my understanding that as to the third and fourth prong, you said that in your brief you concede that if we disagree with your understanding of Delgado-Lopez, that the third and fourth prong would be satisfied. Do I understand that correctly? If I could clarify, Your Honor, because there's two ways in which this court could affirm, and our plain error analysis differs a little depending upon how the court couches this question. If the only issue is failure to cite the right test, and this argument is the one that hangs on that single sentence in the sentencing where the court said, a lot of mules are accessed, take it to Chicago and come back, I'll give you $1,000 or something, but this went on over a period of time. So that is the one sentence upon which their argument hinges. If that is the argument that carries the day, we have a couple of responses. First of all, the court found that the defendant's story was not credible. If there's not credible evidence and the defendant has the burden of proof, there is nothing provided for the court to weigh against some other relative participant. Ms. Herberle, why would that be? Under 3B1.2, the court has the obligation under U.S. v. Heurich to compare the relative culpability of Mr. Berryhill to the other participants in the conspiracy, and whether he was a mule, whether he was the planter, whether he was a liaison, why would that legally matter, his particular role, because the responsibility of the judge is the same in any event? Because before we get to the point, this court's case law is clear, before we get to the point where there has to be that relative culpability analysis, we have to have some understanding of what the defendant's role is to compare. Here, the only thing the court had were the statements from the defendant, which the court did not find credible based upon the information in paragraph 18 of the PSR. And what the government is saying is that there is no requirement under this court's case law to cite the test that's being applied. Well, you do have the right, I mean, I'm sorry. No, go ahead. You go ahead. Under Heurich, the court absolutely has an obligation, does it not, to compare the relative culpability of the defendant to the other participants in the conspiracy. That's why we reversed in Wendy Heurich's case. The government is not arguing with the requirement to do a comparison if the defendant has met the burden of proof to even provide any evidence whatsoever that's credible for the court to weigh. And it's the if that's interesting here. As I understand it, at least I read your argument as essentially establishing a threshold test before one engages in the comparative analysis. In other words, it's only if the defendant passes through the gate of credibility in terms of their assertions as it relates to their role that the court will actually engage in a comparative analysis. Do I understand that correctly? Yes. Okay, and so that's based upon your Delgado-Lopez decision, right? Yes, Your Honor. Do you have any others? Okay, Delgado-Lopez. Well, going back to the question I asked before, if we don't read Delgado-Lopez the way you do, then do you lose? Because, I mean, as I understood it, you conceded three and four, and apparently didn't make an argument on two. So if the argument, if this court ultimately decides that the only failure here was a failure to cite the right test. I understand that that's one way to phrase it, Ms. Eberly, but let's say apply the right test. Apply the right test. Okay. We do not concede that the proof that was presented here could not have applied and supported the right test. What we're saying, if this is purely a legal error where the court did not say the name of the test that was being applied or somehow referenced that, we're saying that that would not affect the defendant's substantive rights because here the court did look at those things. Now, let me address what I'm sure will be a question. I'm ready. Go ahead. You know the chief. It is difficult in this case, and I've never seen a simple drug mill case become so complex when we try to figure out an analytical framework to deal with it because the court's discussion of the factors it discussed could be used in order to say there's no proof here that's adequate for me to even have to reason. That same discussion, however, also supports those five factors, which this court has held. The court doesn't have to tick them off mathematically. The court doesn't have to refer to the five tests. This court grants great discretion to the sentencing court, including that if there are two permissible views of the evidence, this court will not reweigh that evidence. So what we're saying is those same facts could also be supportive of the court having actually engaged in that test, and if that is the point, the only issue here is whether or not that one straight reference to some courier from Chicago is enough to derail what is obviously otherwise meets those five tests. And we argue that if the argument here is that the wrong test was actually used, if the court actually used the wrong test, then we would agree that that would be error, that it would be error that affects a defendant's fundamental rights, substantive rights, and affects the impartiality of the judiciary. And it would be clear or obvious error. It would be clear. Okay, all right, all right. So we got there. We got there. And so I understand, and this is what I understand you to be saying, that in substance the court did apply the right legal test, right? Yes. Okay. But the one concern would be if that one sentence really can be construed as, and I guess that's what you're getting at, I mean the question really is, is that one sentence enough to suggest that the court applied the wrong legal lens?  Okay. And that is our position. That's what this all comes down to is that one sentence. And the government's argument is that that sentence is not enough. This is not like the prior case of this court where the court made a similar finding, that there was discussion of stray factors that were inappropriate, where the court went off on a tangent, conducting a massive financial analysis of how much the defendant spent on expenses, whether or not he would have made as much money as a mule just by sitting at home and having a day job, versus what he probably made here. All of that was extraneous, improper, and based upon that, and the fact that that financial discussion, that sentencing, clearly drove the judge's sentencing there. That's not this case. In this case, the judge went through the fact that the defendant used his own car, that the defendant planned his own routes, that he talked with people in Mexico about pricing and distribution, that he was paid for trips, and he argues he was only paid $1,000, but according to the defendant's brief at page 2, we know he was found with $2,500. So even that did not lend credibility to the defendant's statement. And given all that, we would argue that there's no doubt that this defendant is similar to the drug mules and defendants that were discussed by the General Counsel for the U.S. Sentencing Commission when in late 2024 they put out a primer on mitigating roles and role adjustments. And the primer states that courts tend to deny reductions for couriers upon a finding that the defendant was more than a courier because, and there's some examples given, all of which apply here, the defendant had transported a significant quantity of drugs, acted as a courier on multiple occasions, had a relationship with the organization's leadership, and for that we just rely on these phone calls to someone with a Mexican phone number, and was well compensated for providing drugs. Bottom line, Your Honor, we do not believe the court applied the wrong test. The government does not believe that there was even enough proof put on by the defendant to get to where you'd need to supply a test. We do not know exactly what the defendant's role in any organization was because his testimony was not credible. The defendant provided nothing as to who the other roles were. In many of the other cases where the court has looked at the drug mule situation, the drug mule themselves have provided some detail about how they were recruited, who gave them instructions, who they delivered to, way more detail than this defendant provided. In short, the fact that we're left with kind of an ambiguous possibly comments from the judge here that have caused this appeal, the burden for that falls on the defendant. Based upon the proof the defendant offered, we don't even know if there was a larger overarching organization. Well, is it indisputable that somebody planned the conspiracy, somebody organized the conspiracy, and he's saying in objection number one that he didn't do it, right? Well, this is not, Your Honor, a case where we have a large OSODEF investigation with a conspiracy and a graph on the wall where we know who everyone is. Given the things that he's talking about with people in Mexico, there's no reason to discount the fact that he may have been contacting people in Mexico to get methamphetamine, driving it across the country himself, selling it himself. He may be the head of the cartel, but nobody suggested it. The government didn't suggest it. The judge certainly didn't suggest it. Is that fair? It's fair to argue that we're not saying he's the criminal mastermind, but according to, I believe it's the Nekomi decision, and I'm sure I'm mispronouncing that, this is not a situation where the criminal mastermind is the only person who does not get a mitigating role. The Sentencing Commission has set up a hierarchy that includes a factor I think we often forget, which is the average participant. We've got minimal roles, we've got aggravating roles, but there are a lot of people who have to fit within that average category, and that is where this defendant fits. Do you remember the Wendy Urick case? Do you remember U.S. v. Wendy Urick? Yes. Well, why isn't this just like Wendy Urick? The judge here specifically says, well, he did a lot of things, as Judge Seymour mentioned and as you mentioned, and the district court denied the mitigating role adjustment, saying that Wendy Urick had an indispensable central role, and we unanimously reversed and said, well, that's not the issue under 3B1.2. It's not whether or not she was really important, to use your example, whether or not she played an integral role in this conspiracy. It was not whether or not she had a big role. It's whether or not she had a big role vis-à-vis the other people in this particular conspiracy, and why isn't what the judge did here similar to what the judge did in the Urick case? Your Honor, I notice I'm out of time. May I answer? Yes. The Urick case was different in a number of respects. First of all, there was a lot of proof as to the scope of that broad financial advance fee scheme run from Cameroon. There was discussion, great discussion, about even contrasting just the roles of Ms. Urick and her husband, but the bottom line with the Urick case is that the court applied the wrong test there by deciding that what they needed to look at was whether or not this was a central role or an indispensable role, et cetera, and there are cases that have decided that that is not the correct test. You're supposed to apply those five factors, assuming the defendant's given you enough to do so, and look at their relative culpability within the scheme in which they are participating. Well, is the question really then how clearly, I mean, in Urick, the court clearly aired, and I don't mean it in a standard review sense, I meant obviously communicated the wrong standard. Is the point here in part that there's ambiguity as to whether the court actually engaged in legal error in terms of the one sentence? I mean, is that a point of distinction? I think there is one sentence here. I think that in Urick there was a lot of analysis by the court. That was wrong. And it was wrong. Here the court was making a point, and if you look at what went directly before and directly after that sentence on relativity, it all relates to the fact that this was not a one-time occurrence. This defendant made multiple trips. That is not looking at an average participant. That's just looking at how many trips he made, which is a factor that is encouraged and allowed by the Sentencing Commission. If there are no further questions, we'd ask the court to affirm. It's about Delgado-Lopez establishing some sort of threshold test, and I agree it doesn't, but I want to talk about the government's argument there wasn't enough proof. So counsel or the defendant's statements alone here regarding not being part of the sort of profit share or getting profits or being told where to go and where to drop it off, these were uncontested, and certainly counsel's written statements, sentencing can constitute evidence. That's Guideline 6A1.3 in the commentary, and this was uncontested. So I think we can actually use that and look to see whether there was actually some sort of finding that was required. And that brings me to the next point, is that we really have the wrong test being applied here for two reasons. Certainly the court does say why it thinks that being more than a one-time mule has any sort of legal effect, and that's because it's more than the average mule. I mean, it's not just a throwaway one sentence. That is actually the very hinge that the court relies on when it's ruling and denying an adjustment. But moreover, even if you were to say, well, that's just kind of a minor thing, then the court is still hinging it on multiple times, multiple trips, and that is not the basis. Multiple trips is not a permissible consideration in determining whether somebody gets the adjustment? I'm not saying it's not permissible, Your Honor. I'm saying that that does not resolve the argument here. That does not allow the court to misuse the test. Well, what I understood, two things I took, and there are more, I'm sure, but two things I took from Ms. Epperle's argument. One, that in substance, as it relates to the five factors, the court applied those five factors. In substance, it did it. It didn't expressly enumerate, but it did it. Second thing is that the one sentence where it talks about Chicago or something, some thousand-dollar mule, well, that that was not. That's ambiguous, and let's focus on the second one, that it's ambiguous as to whether the court actually applied the wrong test, and given that we're on plain error review, that if you can't make it crystalline to us that that's a legal error, then you lose, so let's focus on that one. Why should we reverse, send it back, and have a resentencing over something that is just one line? Well, it's one line in an order that is within one page of transcript, so to say it's one line, we've got to take that in context, but moreover, Your Honor, the court's order doesn't make sense without that premise there because if the court's just saying this is more than one time and denies it, that's not any sort of standard. That's not any sort of legal hook or anything that ties it to the test in any way, shape, or form. What the court's saying is it's significant because the average courier only does this one time. That's why the court is saying that. That's what's giving it significance, and I'm out of time, Your Honors. Thank you, counsel. Thank you for your fine arguments in case you submitted.